## EXHIBIT "A"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
======================================

OPTO GENERIC DEVICES, INC.

                Plaintiffs,

   -against-

AIR PRODUCTS AND CHEMICALS, INC.,

                Defendant.
======================================

**AMENDED COMPLAINT**

Civil Case No: 6:08-cv-00234 (DNH-DEP)

ECF CASE

Plaintiff, by its attorneys, Scarzafava & Basdekis, LLP and the Harlem Law Office, as and for its Amended Complaint against Defendant, alleges as follows:

### INTRODUCTION

1. This action is for money damages and a declaratory judgment arising out of an agreement entered into by Opto Generic Devices, Inc. ('OGD") and Defendant Air Products & Chemicals, Inc. ("Air Products"), and out of Air Products' material breach of that agreement.

### PARTIES

2. OGD is a New York corporation, with its principal place of business at 174 Pumpkin Hook Road, Van Hornesville, New York 13475.

3. Air Products is a Delaware corporation with its principal place of business at 7201 Hamilton Boulevard, Allentown, Pennsylvania 18195.

### JURISDICTION AND VENUE

4. Upon information and belief, the defendant, Air Products and Chemicals, Inc., is a corporation authorized to transact business in the State of New York.

5. Jurisdiction is based upon the Title 28 U.S.C. §1332 in that the plaintiff and defendant are citizens of different State and the amount in controversy exceeds SEVENTY - FIVE THOUSAND DOLLARS ($75,000.00).

6. Further, defendant has consented to jurisdiction by removing this claim to Federal Court in the Northern District of New York.

## STATEMENT OF FACTS

7. The parties entered into a Contract entitled "Agreement Between Air Products and Chemicals, Inc., and Opto Generic Devices, Inc., Pertaining to Energy Management Technology." A true and correct copy of the Contract is attached hereto as Exhibit A.

8. The Contract was amended on July 13, 2007. A true and correct copy of the amendment to the Contract is attached hereto as Exhibit B.

9. The Contract concerned the development and licensing of certain technology (the "Technology") that was to be utilized by Air Products.

10. The Contract required OGD to use its best efforts to achieve certain objectives and milestones related to the development of the Technology, which OGD has done.

11. In addition, the Contract purported to grant Air Products certain license rights to Technology developed by OGD pursuant to the Contract.

12. In return, the Contract required Air Products to pay OGD two million dollars ($2,000,000.), according to the following schedule:

    1. Four-hundred-thousand dollars ($400,000.00), contemporaneous with execution of the Contract;

    2. Two-hundred-thousand dollars ($200,000.00) by May 15, 2007;

    3. One-hundred -thousand dollars ($100,000.00) by June 15, 2007;

  4. One-hundred-thousand dollars ($100,000.00) by July 15, 2007;

  5. One-hundred-thousand dollars ($100,000.00) by August 15, 2007;

  6. One-hundred-thousand dollars ($100,000.00) by September 15, 2007;

  7. Four-hundred-thousand dollars ($400,000.00) by October 15, 2007;

  8. Two-hundred-thousand dollars ($200,000.00) by November 15, 2007;

  9. One-hundred-thousand dollars ($100,000.00) by December 15, 2007;

  10. One-hundred-thousand dollars ($100,000.00) by January 15, 2008;

  11. One-hundred-thousand dollars ($100,000.00) by February 15, 2008; and

  12. One-hundred-thousand dollars ($100,000.00) by March 15, 2008.

13. Upon completion of development of the Technology, the Contract entitled OGD to royalties from licensing the technology, a percentage of profits and energy savings resulting from the Air Products' use and sale of the licensed technology, as well as other fees and obligations from the developed licensed technology.

14. Air Products made payment to OGD of nine-hundred thousand dollars ($900,000.00) under the Contract ( the execution payment, and the May, June, July and August payments).

15. These payments were made without any complaints, written or otherwise, to OGD that would indicate that Air Products was dissatisfied with OGD's performance.

16. In September 2007, after not having received the one-hundred-thousand dollar ($100,000.00) payment due on September 15, 2007, OGD contacted Air Products to inquire as to the delay. A representative from Air Products' accounts payable department advised OGD that Paul Persico of Air Products had ordered payments to be stopped to OGD.

17. OGD contacted Mr. Persico about the matter in late-September 2007. Mr. Persico state that he would like to meet with OGD to discuss the Agreement. Mr. Persico also represented that

he would ensure that the payment due on September 15, 2007 be made prior to the meeting. Ormonde G. Durham, III, OGD's President, agreed to meet with Mr. Persico on this basis.

18. During the meeting, which occurred early in October 2007, Mr. Persico represented to Mr. Durham that Air Products had sent payment due on September 15, 2007. This representation turned out to be false.

19. Since Air Products began failing to make payments under the Contract, OGD has made a considerable effort in good faith to resolve its dispute with Air Products without having to resort to litigation.

20. Despite OGD's good faith efforts, Air Products has failed and refused to make any other payments to OGD, in material breach of the Contract.

21. OGD has placed Air Products on notice of its material breach.

22. However, Air Products has failed and refused to cure its material breach.

## COUNT I
### (Breach of Contract)

23. OGD repeats and realleges all of the allegations set forth above as if more fully set forth herein.

24. OGD has performed all of its obligations under the Contract.

25. Air Products has failed and refused to make payments to OGD as required by the Contract.

26. Air Products' has failed to comply with the portions of the Contract which would have produced profits from the energy savings and sale of the developed technology.

27. Air Products' failure to perform constitutes a material breach of the Contract.

28. As a result of Air Products' material breach OGD has suffered damages in an amount to be determined at trial, including attorneys' fees, costs and interest.

## COUNT II
### (Declaratory Judgment)

29. OGD repeats and realleges all of the allegations set forth above as if more fully set forth herein.

30. The Contract grants certain limited license rights to Air Products under Article 8.

31. Article 12.2 of the Contract provides that the license rights under Articles 8.2 and 8.3 of the Contract "shall revert to non-exclusive licenses upon termination of the Contract" where the "Contract is terminated based upon AIR PRODUCTS' material breach" and the "aggregated amount of fees paid to AIR PRODUCTS under Article 4 (Budget and Payment Schedule) and any payments made by AIR PRODUCTS to OGD within thirty (30) days after termination to perfect such Exclusive License Rights does not exceed one million two hundred thousand dollars ($1,200,000 USD)." Air Products has committed a material breach of the Contract without cure.

32. In addition, Air Products has failed to pay any amount to OGD since the termination. Further, Air Products' has failed to comply with the provisions of the Contract which would have produced profits from the energy savings and sale of the developed technology.

33. As a result, OGD is entitled to a judgment declaring that Air Products has no license rights under the contract, and that OGD has exclusive license rights to the patents and technology.

## COUNT III
### (Breach of duty of Good Faith and Fair Dealing)

34. OGD repeats and realleges all of the allegations set forth above as if more fully set forth herein.

35. Implied in the Contract is a duty of good faith and fair dealing.

36. Air Products has violated that duty by demanding performance by OGD not required under the Contract, seeking to impose obligations upon OGD that are outside of the Contract, refusing to consider and accept proof of OGD's performance under the Contract, and demanding that the Contract be rewritten. Air Products' has also put OGD under economic duress by refusing to make the payments that are necessary, and by failing to comply with the portions of the Contract which would have produced profits from the energy savings and sale of the developed technology. This was done in an effort to take OGD's technology without compensation.

37. As a result of Air Products' violation of the duty of good faith and fair dealing, OGD has suffered damages in an amount to be determined at trial, including attorneys' fees, costs and interest.

## COUNT IV
### (Fraudulent Inducement, Fraudulent Execution)

38. OGD repeats and realleges all of the allegations set forth above as if more fully set forth herein

39. That upon information and belief, Air Products entered into the Contract and/or executed the Contract with the intent of breaching the Contract, putting OGD at an economic disadvantage, and claiming the rights to technology that rightfully belong to OGD.

40. In furtherance of their objective, Air Products terminated the contract without warning, failing to abide by the requirements of termination placing OGD in economic duress, because they would ultimately get OGD's technology: to wit, the contract called for Air Products to gain the technology if OGD were to go bankrupt.

41. Another example of fraud was Air Products intentional misrepresentation of the Ohio test results.

42. Further, Air Products' has not complied with the portions of the Contract which would have produced profits from the energy savings and sale of the developed technology. This was done in an effort to take OGD's technology without compensation.

43. As a result of Air Products fraudulent inducement/fraudulent execution of the contract, OGD has suffered damages.

## COUNT V
### (Breach of Fiduciary Duty)

44. OGD repeats and realleges all of the allegations set forth above as if more fully set forth herein.

45. That upon information and belief, Air Products owed a fiduciary duty to OGD to keep OGD's trade secrets confidential.

46. That upon information and belief, Air Products has breached the fiduciary duty to OGD by sharing OGD's technical information with other entities, and subsuming unto itself those rights of OGD.

47. This was done in an effort to take OGD's technology without compensation.

48. As a result of Air Products breach of fiduciary duty, OGD has suffered damages.

## COUNT VI
### (Economic Duress)

49. OGD repeats and realleges all of the allegations set forth above as if more fully set forth herein

50. That upon information and belief, Air Products' decided to breach the Contract thereby placing OGD in economic duress.

51. Further, Air Products' has not complied with the portions of the Contract which would have produced profits from the energy savings and sale of the developed technology. This was done in an effort to take OGD's technology without compensation.

52. This was further done in an effort to bankrupt OGD and assume unto itself the rights to the technology which belong to OGD.

53. As a result OGD has suffered damages.

## JURY DEMAND

OGD demands a trial by jury on all issues so triable.

## DAMAGES

**WHEREFORE,** OGD respectfully demands:

(a). Compensatory and consequential damages in the amount of $500,000,000, (FIVE HUNDRED MILLION DOLLARS) as well as double or treble damages where applicable;

(b). A judgment declaring that Air Products has no license rights under the contract and that OGD has exclusive rights to the patents and technology;

(c). Punitive damages in the amount of $500,000,000 (FIVE HUNDRED MILLION DOLLARS) for Air Products malfeasance, fraud, and bad faith;

(d). Attorney's fees;

(e). The costs and disbursements of this action;

(f). Interest; and

(g). Such other and further relief as the Court deems just and proper.

Dated: _____, 2008

           SCARZAFAVA & BASDEKIS, LLP

           John Scarzafava, Esq.
           Bar Roll Number: 102532
           Attorneys for Plaintiff
           Office and P.O. Address
           48 Dietz Street, Suite C
           Oneonta, New York 13820
           (607) 432-9341
           Email: scarzafavalaw@yahoo.com

           THE HARLEM LAW OFFICE

           Robert A. Harlem, Esq.
           Bar Roll No. 601291
           Attorneys for Plaintiff
           493 Chestnut Street, Suite 3
           Oneonta, New York 13820
           (607) 432-3611