UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
OPTO GENERIC DEVICES, INC.

                           Plaintiff,

   -v-                                         6:08-CV-234

AIR PRODUCTS & CHEMICALS, INCORPORATED;

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SCARZAFAVA & BASDEKIS, LLP<br>Attorneys for Plaintiff<br>48 Dietz Street, Suite C<br>Oneonta, NY 13820-5107 | JOHN SCARZAFAVA, ESQ.<br>THEODOROS BASDEKIS, ESQ. |
| STRADLEY RONON STEVENS & YOUNG, LLP<br>Attorneys for Defendant<br>30 Valley Stream Parkway<br>Malvern, PA 19355 | KEITH R. CUTILL, ESQ.<br>KEVIN R. CASEY, ESQ.<br>STUART D. LURIE, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

       Defendant Air Products & Chemicals, Incorporated ("Air Products" or "defendant") moved for summary judgment in its favor and against plaintiff Opto Generic Devices, Inc.'s ("OGD" or "plaintiff"). Plaintiff opposed and defendant replied.

       Air Products also moved to preclude the expert testimony of Timothy J. Garrison, Ph.D. ("Dr. Garrison"). Plaintiff opposed.

Oral argument was heard July 10, 2009, in Utica, New York. Decision was reserved.

## II. BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to OGD, as must be done on a motion for summary judgment, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). Additional background facts are set forth in a Memorandum-Decision and Order. Opto Generic Devices, Inc. v. Air Prods. & Chems., Inc., No. 6:08-CV-234, 2010 WL 454986 (N.D.N.Y. Feb. 2, 2010).

OGD developed and marketed devices that would be installed on equipment such as air conditioners in order to reduce the energy usage of the equipment. Its adaptive climate controller is called the "ACC-1." Plaintiff filed a patent application covering the ACC-1. However, a former employee, Andrew W. Olney ("Olney") allegedly had stolen plaintiff's proprietary information regarding the ACC-1 and also filed a patent application covering the device. When OGD discovered this, it sued Olney to protect its proprietary technology and obtain its rightful patent. Plaintiff pursued its ownership rights in the technology through the Olney litigation, rather than through an attack on Olney's patent application. A patent was issued to Olney, the '429 patent, covering the technology contained in the ACC-1.

Plaintiff and defendant negotiated for some months before entering into a contract under which Air Products would expand marketing for the ACC-1 and OGD would develop three new devices, upgrades to the ACC-1, about which more detail will follow. During the negotiations, Ormonde Durham III ("Durham"), the Chief Executive Officer and majority owner of OGD, told Paul Persico ("Persico") and other representatives of Air Products about the lawsuit against the former employee Olney. Sometime before plaintiff and defendant

executed their contract, Durham told Persico that a preliminary injunction against Olney had been issued in that litigation. Eventually the Olney litigation settled resulting in a grant of sole ownership of the Olney patent to plaintiff.

OGD and Air Products executed their agreement ("the Contract") on April 13, 2007. (Second Am. Compl. Ex. A Doc. 45 (hereinafter "Contract").) Under the Contract, plaintiff was to "use [its] best efforts to undertake the development project and to achieve the objectives set forth in" an attached scope of work. Id. ¶ 3.1 (emphasis omitted). The parties were to meet at least monthly to review progress on the goals, priorities, milestones, and funding, which could be revised so that the objectives would be best accomplished. Id. ¶ 3.2. Defendant reserved the right to approve any revisions, and Persico was given authority to give approval for Air Products. Id. Again, OGD was to "use its best efforts to complete work . . . within the time allocations." Id. ¶ 3.3. Additionally, Air Products personnel were to make visits to plaintiff to review accomplishments, observe work, provide guidance, and provide technical assistance. Id. ¶¶ 3.4-3.5.

Under the Contract, plaintiff was to prosecute, to the extent specified, the patent application that it had filed covering the ACC-1. Further, plaintiff and defendant would jointly file, prosecute, issue, and maintain, as well as own, any patents derived from the development projects under the Contract. Id. ¶¶ 7.4, 6.1. Under Article 8 of the Contract, OGD granted certain commercial rights and licenses to Air Products to market and sell devices developed under the Contract. Id. Art. 8.

A scope of work was attached to the Contract setting forth objectives and milestones for each of the subprojects. As was contemplated by the Contract, a revised, more detailed, scope of work dated June 1, 2007, was executed on July 13, 2007. Id. Ex. B

(hereinafter "Scope of Work").  The Scope of Work set forth detailed objectives for Project 1 ("P1") related to the new device that would alter the ACC-1 so that it could be used with voltages found in Europe and Asia in addition to the United States.  The objectives were:

> Deliver a version of ACC-1 (P1) capable of supporting the common distribution voltages found in Residential and Commercial applications in US, Europe and Asia.
>
> Quantify the total system energy efficiency performance of the current ACC-1 and the P1 in Packaged Terminal Air Conditioning (PTAC) applications using a test methodology consistent with or equivalent to ISO New England's Manual for Measurement and Verification of Demand Reduction Value from Demand Resources ["ISO-NE M&V Manual"].
>
> Quantify the total system energy efficiency performance of the current ACC-1 and the P1 in Portable and Trailer Mounted Packaged HVAC systems using a test methodology consistent with or equivalent to ISO New England's Manual for Measurement and Verification of Demand Reduction Value from Demand Resources.

Id.  The milestones were that plaintiff and defendant would "sign off on P1 Engineering Specification" by June 11, 2007; complete ACC-1 baseline measurement and verification by September 14, 2007; complete development of P1 November 30, 2007; and "P1 Design Review and AP Acceptance" by December 5, 2007.  Id.  The second project, P2, provided for modification of the P1 device for use on all single phase power drivers.  Id.  P2 was to be completed by March 25, 2008, with periodic milestones before that date.  Id.  The third project, P3, involved development of a device for industrial applications to convert 480 volt motors to variable speed.  Id.  Its completion date was November 13, 2008, again with milestones periodically.  Id.

Article 16 addressed warranties and representations.  OGD warranted that it was the sole owner of the ACC-1 patent rights, and it had the full right to license such rights to Air Products.  Id. ¶ 16.1.  Further, both parties expressly disavowed any warranties or

- 4 -

representations other than as set forth in the Contract. Id. ¶ 16.3. Both parties also made express disclaimers, an example of which provides that "any warranty or representation as to the validity or scope of the" patent rights over ACC-1 or devices developed under the Contract. Id. ¶ 16.4 (emphasis omitted).

Under the Contract, both parties had the right to terminate by written notice under certain circumstances. Id. ¶ 12.1. First, a party could terminate if the other party was "in material breach of any of its obligations" under the Contract and the breach was not cured within thirty days of the date of the written notice. Id. ¶ 12.1.1. Next, one party could terminate if the other was adjudged bankrupt, went into liquidation, or went into receivership. Id. ¶ 12.1.2. Finally, a party could unilaterally terminate the Contract upon six months written notice if it was determined that the underlying technology was not commercially or technically practical for development as envisioned. Id. ¶ 12.1.3.

As noted above, the Contract was executed in April 2007 and the Scope of Work dated June 1, 2007 was executed in July 2007. Pursuant to the Contract, defendant made an initial payment of $400,000 in consideration for the specified commercial and license rights. It also made progress payments in accordance with the Contract terms as follows: May 2007 $200,000; June 2007 $100,000; July 2007 $100,000; and August 2007 $100,000.

Thomas Yeh ("Yeh") of Air Products chose the site for testing under the P1 objectives, an Intertek facility in Columbus, Ohio. Yeh also participated in development of the test methodology. Plaintiff tested its ACC technology at the Intertek facility, and Yeh reviewed the tests as they were conducted for validity. According to defendant's and Yeh's definition, the testing was ISO-NE M&V Manual compliant as required by the Scope of Work. The testing was completed by September 2, 2007. On September 4, 2007, Yeh presented

an analysis of the Intertek testing to plaintiff.  This testing met the September 14, 2007, milestone for ACC-1 Baseline Measurement and Verification set forth in the Scope of Work for P1.  The objectives for P1 were completed as of September 2, 2007, with the exception of trailer mounted testing, which Yeh had not incorporated into his test methodology.

According to the Contract payment schedule, defendant was to make a $100,000 payment to OGD on September 15, 2007.  Persico assured Durham that the payment would be made.  However, Air Products never made that payment nor explained why it did not do so.  On September 27, 2007, plaintiff made a demand for payment upon defendant.  After OGD demanded payment, Air Products complained that the objectives for P1 were not met because trailer mounted testing had not been completed.

A payment of $400,000 was due on October 15, 2007.  Defendant did not make that payment.

On October 23, 2007, Air Products sent a Notice to Cure pursuant to Article 12 of the Contract.  According to the letter, plaintiff was in material breach of multiple provisions of the Contract.  The letter states that it failed to achieve any of the objectives and milestones set forth in the Scope of Work.  It further states that OGD entered into negotiations and the Contract without fully apprising defendant regarding the Olney litigation, thus breaching the warranty and representation set forth in Article 16.1.  The letter demanded a written response.

Since Air Products stopped payments to OGD, it has been unable to continue development of new devices based upon the ACC-1 technology due to lack of funding.

Plaintiff filed this action in New York State Supreme Court, and defendant removed it to this Court on February 28, 2008.  In its Second Amended Complaint OGD brought four

causes of action: Count I, breach of contract (failure to make payment and comply with Contract provisions that would have produced profits); Count II, declaratory judgment (declaration that defendant has no license rights under the Contract); Count III, breach of duty of good faith and fair dealing; and Count IV, fraudulent execution (intentional misinterpretation of test results).

In its Amended Counterclaim, Air Products asserted seven counterclaims: Count I, breach of contract (failure to use best efforts to achieve objectives and milestones); Count II, breach of contract (warranties and representations in Article 16.1); Count III, breach of implied duty of good faith and fair dealing (failure to disclose dispute in ownership of patent and invalidity or unenforceability of patent); Count IV, declaratory judgment (defendant owns license rights set forth in Article 8 of the Contract; Count V, fraudulent inducement/ nondisclosure (failure to disclose dispute in ownership of patent and invalidity or unenforceability of patent); Count VI, declaratory judgment ('429 patent invalid and unenforceable); and Count VII, declaratory judgment (plaintiff's patent application invalid and unenforceable).

Again, defendant seeks summary judgment in its favor as against plaintiff. According to its motion papers, it seeks a determination that the contract underlying plaintiff's claims is void and it is entitled to reimbursement of the full amount of the payments it made to plaintiff under the Contract ($900,000). However, it is unclear if the motion is based upon an affirmative defense or as to which claims or counterclaims it seeks summary judgment, since defendant's submissions do not address claims, counterclaims, or affirmative defenses. Similarly, plaintiff's submissions counter defendant's points but fail to address claims, counterclaims, or affirmative defenses. Accordingly, this Memorandum-Decision and

Order analyzes defendant's arguments without addressing the specific claims, counterclaims, and affirmative defenses, except in summary of what remains to be tried.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV. DISCUSSION

Air Products asserts two bases upon which it should be granted summary judgment. First, defendant contends that OGD fraudulently induced it into executing the

Contract and therefore the Contract is voidable. Second, Air Products argues that plaintiff materially breached the Contract by failing to perform the third objective for P1, thus relieving it of its obligations under the Contract.

### A. Fraudulent Inducement

"Under New York law, the five elements of a fraud claim . . . [are]: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006). Each element must be proven by clear and convincing evidence. Id. A party, especially a sophisticated business person, must make use of the means available to them to investigate the accuracy of information provided by the other party. Id. at 234-35. Only when information is "'peculiarly within defendant's knowledge[ ] [is it] said that plaintiff may rely without prosecuting an investigation, as he ha[d] no independent means of ascertaining the truth.'" Id. at 234 (alterations in original) (quoting Mallis v. Bankers Trust Co., 615 F.2d 68, 80 (2d Cir. 1980)).

Viewing the facts in the light most favorable to plaintiff it apprised defendant of the ongoing lawsuit pertaining to the Olney patent application prior to entering into the Contract. Also, OGD had a patent application covering the ACC-1 pending at the time. Thus, plaintiff has established a question of fact as to whether it made a misrepresentation regarding its ownership rights of a patent application covering ACC-1. Information regarding the Olney litigation and both patent applications was freely available to Air Products. Further, defendant was a sophisticated party, so that its knowledge of the Olney litigation triggered a duty to further investigate the status of the ownership rights of a patent application covering

the ACC-1. Because it failed to further investigate, a question of fact exists as to whether reliance upon OGD's statement was reasonable. Air Products is not entitled to summary judgment on its fraudulent inducement claim.

### B. Breach of Contract

A contract must be "construed in accord with the parties' intent." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (N.Y. 2002). The written contract is the best evidence of their intent, and if the writing is clear and unambiguous it "must be enforced according to the plain meaning of its terms." Id. A written contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning." Id. at 570. The question of a contract's ambiguity is one of law for the court. Id. at 569. Extrinsic evidence as to the parties' intent cannot be considered unless the written agreement is ambiguous. Id.

Air Products claims entitlement to summary judgment because OGD failed to meet a September 14, 2007, deadline for portable trailer mounted testing of the ACC-1 and P1. Failure to meet this deadline, according to defendant, put plaintiff in material breach of the Contract making it susceptible to termination under Article 12.

Under Article 12, there clearly is a right to terminate the contract upon written notice of material breach and failure to cure within thirty days.[1] What is at issue is whether (1) the Scope of Work provided September 14, 2007, as a deadline for completion of portable trailer

---

[1] Article 12 states:
12.1 Either Party shall have the right to terminate this AGREEMENT by written notice to the other Party in the event that:
    12.1.1 such other Party is in material breach of any of its obligations under this AGREEMENT, such breach not being remedied within thirty (30) days of the date of any written notice from the other Party to do so.
(Contract Art. 12.)

mounted testing, and (2) Air Products' failure meet its payment obligations under the Contract relieved OGD of its duty to perform.

The September 14, 2007, date relates to the milestone "ACC-1 Baseline Measurement and Verification Complete."  Id.  The ACC-1 baseline measurement and verification was completed at the Intertek facility in Ohio as of September 2, 2007.  (Durham Aff. ¶ 9.)

One of the objectives for P1 was to quantify the "current ACC-1 and the P1 in Portable and Trailer Mounted Packaged HVAC systems" using ISO-NE consistent test methodology.  (Scope of Work P1 Objectives.)  There is no deadline date set forth related to this or the other objectives, including the objectives for P2 and P3.  The meaning of the term "objective" is "something aimed at or striven for."  Webster's New World Collegiate Dictionary 994 (4th ed. 2008).  This meaning is consistent with other terms in the Contract indicating that plaintiff would strive to meet the objectives.  For example, OGD agreed to "use best efforts to . . . achieve the objectives" in the Scope of Work.  (Contract ¶ 3.1.)  Further, there are three objectives, but four milestones with dates,[2] and it is the third objective that defendant attempts to bring under the completion date for the second milestone.  The objectives and milestones plainly do not correspond.  Moreover, it would defy common sense to require quantification of the P1 energy efficiency performance in portable and trailer mounted HVAC systems on September 14, 2007, some two and one-half months before its development was complete on November 30, 2007.  Reading the Contract as a whole, it is unambiguous in describing objectives that the parties would work toward without any set

---

[2] Similarly, P2 has three objectives without dates and six milestones with dates, and P3 has three undated objectives and seven dated milestones.

deadline dates.  See South Road Assocs., LLC v. Int's Bus. Machs. Corp., 4 N.Y.3d 272, 277 (N.Y. 2005) (stating that a contract must be read as a whole).  It would be contrary to the intent of the parties as reflected in the unambiguous Contract to read the objectives as having deadline dates.  Thus, Air Products is not entitled to summary judgment on this basis.

### C. Expert Timothy J. Garrison, Ph.D.

Expert testimony of a scientific, technical or other specialized nature is admissible to assist the trier of fact in understanding the evidence or determining a fact in issue.  Fed. R. Evid. 702.  An expert witness may testify when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Id.

Plaintiff's expert Timothy J. Garrison, Ph.D. ("Dr. Garrison") proposes to testify regarding the results of testing conducted in December 2008 on its ACC device.  According to OGD, the test methodology mirrored the methodology of the testing done at the Intertek facility in Ohio sometime before September 2, 2007, that was monitored and reported by Yeh of Air Products.  Also according to plaintiff, the Garrison testing had more accurate results showing greater energy savings due to inadequacy of the physical environment at the Intertek facility.

If as OGD states, the methodology used by Dr. Garrison was the same as the testing done at Intertek, then it would be the product of reliable principles and methods. However, Dr. Garrison's testimony pertains to a December 2008 test, and is not related to any testing that was done during the course of performance of the Contract.  December 2008 test results are irrelevant to the issues in this case.

Plaintiff contends that Dr. Garrison's test data is relevant to damages related to the marketing and sales component of the Contract because in order to successfully market and sell a product, the company must demonstrate that it works effectively.  It avers that Dr. Garrison's testing shows that the product offers significant energy savings and is therefore highly marketable.  The difficulty with plaintiff's argument is that Dr. Garrison's testing and results were not available during the course of the contract, even if the parties' performance had not been cut short in September 2007.  Because the results showing significant energy savings were not available until December 2008, they could not have been useful to defendant in marketing plaintiff's products during the course of the Contract from April 13, 2007, until the final milestone of November 13, 2008.  Thus, the December 2008 test results are irrelevant to the question of damages suffered due to Air Products' alleged failure to effectively market OGD's products under the Contract.

## V. **CONCLUSION**

Questions of material fact exist as to whether OGD made a material misrepresentation as to ownership of the patent rights for the ACC-1, and if Air Products reasonably relied on any such misrepresentation.  Thus, defendant is not entitled to summary judgment on its fraudulent inducement claim.

Under the unambiguous terms of the Contract, the parties did not set a deadline date for the objectives set forth in the Scope of Work.  Thus, defendant is not entitled to summary judgment on its claim that plaintiff breached the Contract by failing to complete portable and trailer mounted testing of the P1 by September 14, 2007.

The expert testimony of Dr. Garrison is irrelevant to the issues in this case. Therefore, his testimony is inadmissible under Fed. R. Evid. 702.

As to Count I it is undisputed that Air Products failed to make the payments on September 15, 2007, and October 15, 2007, and any thereafter. However, there are questions of fact as to defendant's performance regarding compliance with the Contract provision that would have produced profits. As to Counts III and IV, questions of fact exist as to Air Products' license rights under the contract and whether it breached its duty of good faith and fair dealing and fraudulently misinterpreted test results. Questions of material fact exist as to all seven counterclaims.

Accordingly, it is

ORDERED that

1. Defendant Air Products' motion for summary judgment is DENIED; and

2. Defendant Air Products' motion to preclude the testimony of Timothy J. Garrison, Ph.D. is GRANTED.

IT IS SO ORDERED.

United States District Judge

Dated: March 15, 2010
           Utica, New York.